**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| **KATOYA T. MOYE,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    Case No.: 8:19-cv-1269 |
| | ) |
| **COMPREHENSIVE HEALTH** | ) |
| **MANAGEMENT, INC. d/b/a** | ) |
| **WELLCARE HEALTH PLANS, INC.,** | ) |
| | ) |
|     **Defendant.** | ) |
|    _____ | ) |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, KATOYA T. MOYE (hereinafter "Plaintiff" or "Moye") and files her Complaint against Defendant, COMPREHENSIVE HEALTH MANAGEMENT, INC. d/b/a WELLCARE HEALTH PLANS, INC. (hereinafter "Defendant" or "CHMI") and in support states the following:

**NATURE OF THE CLAIMS**

1. This is an action for monetary damages, pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e, *et seq*. (hereinafter "Title VII"); Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq*. (hereinafter "ADA"); Family and Medical Leave Act of 1996, 29 U.S.C. § 2601, *et seq*. (hereinafter the "FMLA"); and the Florida Civil Rights Act of 1992, Fla. Stat. §§760.10, *et seq*. (hereinafter "FCRA"); to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's unlawful discrimination, harassment, and retaliation against Plaintiff because of her race, sex, protected medical leave, and disability leading to her unlawful termination.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII, the ADA, and the FMLA.

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law and the Florida Civil Rights Act of 1992 pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## THE PARTIES

5. Plaintiff, MOYE, is a citizen of the United States, and was at all times relevant, a citizen of the State of Florida, residing in Polk County, Florida.

6. Defendant, CHMI, is a Florida For Profit Corporation with its principal place of business in Tampa, Florida.

7. Defendant is a covered employer under Title VII, the ADA, the FMLA, and the FCRA.

## PROCEDURAL REQUIREMENTS

8. Plaintiff has complied with all statutory prerequisites to filing this action.

9. On July 21, 2017, Plaintiff dual-filed a claim with the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunity Commission ("EEOC"), against WellCare Health Plans, Inc., satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e), based on race, sex, and disability discrimination and retaliation.

10. Plaintiff's EEOC charge was filed within three hundred days after the alleged unlawful employment practices occurred. (Exhibit A).

11. On February 26, 2019, the EEOC issued to Plaintiff a Notice of Rights. (Exhibit B).

12. This complaint was filed within ninety days Plaintiff's receipt of the EEOC's Notice of Rights.

## FACTUAL ALLEGATIONS

13. Plaintiff is an African American female who is disabled.

14. Plaintiff was able to perform essential job functions.

15. Plaintiff worked for Defendant as a Senior Recruiter wherein her job duties included recruiting, consulting, and fulfilling the staffing needs of Defendant's stakeholders. Critical to Plaintiff's success in talent acquisition was her ability to develop relationships with the stakeholders she served. Through these relationships Plaintiff would learn the stakeholder's preferences and gain a deeper understand for their needs, which would in turn lead to Plaintiff's ability to better evaluate taken and recruit employees who will meet the stakeholders' needs.

16. Plaintiff began her tenure working on the Clinical Services Operations team. Under the Clinical Services Operations umbrella, Plaintiff recruited talent for multiple departments.

17. Plaintiff worked on a team of three people comprised of Plaintiff, Michael Wilson, Senior Recruiter who is an African American male, and Ana Diaz, Senior Recruiter, who is a Mexican female.

18. Defendant began to target and discriminate against Plaintiff very early in her tenure due to her race and gender. Plaintiff noticed Benu Stephens, Manager, who is an Indian male, treating her in a disparate manner as compared to her team members. Mr. Stephens would not

permit Plaintiff to have her own accounts and would disparately assign Plaintiff responsibilities as compared to her similarly situated team members.

19. In retaliation for reaching out to Employee Relations to discuss her concerns, Mr. Stephens issued Plaintiff a retaliatory final written warning. Mr. Stephens proffered that Plaintiff violated a company policy; however, Plaintiff was not aware of the policy she was accused of violating. In fact, Plaintiff was not made aware of or trained on the policy in question until *after* her final written warning. Upon information and belief Christie Waller, Senior Recruiter, who is Caucasian, had violated the same policy Plaintiff is accused of violating but was not subjected to any discipline or consequence as Plaintiff was.

20. Plaintiff again reached out to discuss her concerns regarding the discrimination. This time, Plaintiff reached out to Christine (last name unknown at this time), Director of Employee Relations. Plaintiff received no response.

21. Megan DePecol, Manager, who is Caucasian, then became Plaintiff's manager and the discrimination, harassment, and retaliation quickly escalated.

22. Within days of becoming Plaintiff's manager, Ms. DePecol issued Plaintiff a corrective action plan covering numerous issues. These issues were never brought to Plaintiff's attention by Ms. DePecol nor were they addressed while she worked under Mr. Stephens. In fact, there were no issues with Plaintiff's performance. Ms. DePecol used the corrective action plan as a tool to retaliate against Plaintiff for raising her concerns to Employee Relations prior. Interestingly, Julia Judge, Employee Relations Manager was present via telephone when Ms. DePecol delivered the corrective action plan to Plaintiff. Ms. Judge expressed shock when she learned none of the issues included in the corrective action plan had been discussed with Plaintiff prior to its issuance; Ms. Judge then abruptly ended the meeting.

23. Plaintiff then met privately with Ms. Judge. Plaintiff again expressed she felt the corrective action plan was retaliatory in nature and a continuation of the discrimination and harassment she was facing. Plaintiff felt hopeful that Ms. Judge would take remedial action. However, those hopes were soon dissolved as Plaintiff received no follow up from Ms. Judge.

24. During this time, Plaintiff was also denied the opportunity to apply for the position of "Lead Role," promotion. Defendant did not give Plaintiff the opportunity to apply, despite there being three open positions. Instead it gave the role to three Caucasian employees, Christie Waller, Rhonda Hodgdon, and Katrina Slevins. Plaintiff also inquired about a "Field Recruiter" position, but she was denied and upon information and belief that position was given to a Caucasian individual.

25. Plaintiff was then placed under Manager Rhonda Hodgdon and Ms. DePecol was promoted to the position of Director. During this transition period, Ms. DePecol commented to Ms. Hodgdon that Plaintiff was "difficult to lead," as if to provide some necessary warning implying Plaintiff was "difficult to lead" simply due to her race.

26. Typically, a Senior Recruiter works for one team and learns the intricacies of each stakeholder's preferences which leads to a Recruiter's ability to select successful talent. To deprive Plaintiff of the opportunity to build a strong relationship with any stakeholder, Ms. DePecol orchestrated a series of disruptive, discriminatory, and retaliatory department transfers to sabotage Plaintiff.

27. Under Ms. DePecol's directive Plaintiff was transferred from the Clinical Services Operations Team and placed on the Claims Operations Team. Claims Operations was part of a completely different division with different quotas. While Plaintiff's base salary was not changed she lost the ability to earn a full bonus. Additionally, Plaintiff's ability to work from home on

certain days was taken from her. However, other members of the Clinical Operations Team such as Ms. Slevin, a Caucasian Senior Recruiter, was permitted to work from home on certain days.

28. Plaintiff's time with the Clinical Operations Team was short lived. In an effort to continue discriminating against Plaintiff and set her up for failure Defendant transferred or changed Plaintiff's role four other times over the course of the next few months.

29. Within thirty (30) days of Plaintiff's move to Clinical Operations she was moved to the Payment Integrity team. Payment Integrity included an entirely different group of stakeholders which negatively impacted Plaintiff's ability to successfully perform her job duties as she had to essentially start over and build an understand of the stakeholder's specific needs and preferences.

30. Within approximately two months Plaintiff was transferred out of Payment Integrity back to Clinical Services Operations. However, upon her transfer she was only permitted to work with the Utilization Review department. After a short time, Plaintiff's assignment with Clinical Services Operations expanded to both the Utilization Review and the Pharmacy department.

31. A short time later, her work with Clinical Services Operations was again stripped from her and Plaintiff was transferred back to the Claims Operations Team, where she remained until her unlawful termination.

32. During this time, Plaintiff learned of a potential compliance matter and expressed that she had a duty to report what she learned. Plaintiff then reported the issue internally via Defendant's Compliance 360 hotline.

33. In the normal course of her job duties, Plaintiff was in communication with managers across Defendant's various departments. It is no coincidence that very soon after her

Compliance 360 report Plaintiff received an email, from the manager she reported as part of the compliance matter, about a seemingly benign work-related matter. Plaintiff replied in the upmost professional manner. Immediately, and again by no coincidence, this manager then forwarded Plaintiff's email to Ms. Hodgdon and copied Ms. DePecol claiming Plaintiff responded in a less than professional manner.

34. As further discrimination and retaliation against Plaintiff, at Ms. DePecol's direction, Ms. Hodgdon issued Plaintiff a write-up for the email exchange described above.

35. When Ms. Hodgdon delivered Plaintiff the write-up she stated that because Plaintiff is "…A black woman she [Plaintiff] will have to work ten times as hard to gain the respect and be accepted as a consultant." Ms. Hodgdon also confirmed Plaintiff's suspicions of the discriminatory animus towards her when Ms. Hodgdon stated, "They [Defendant] doesn't want to accept you [Plaintiff] in this way yet," referring to Plaintiff as a peer and professional.

36. Due to the severe and persistent discrimination and harassment Plaintiff's disability was exacerbated and she took a medical leave of absence. Plaintiff's FMLA leave began October 25, 2016, and she was released to return to work by her doctors on November 21, 2016, with a return to work date of November 28, 2016. Plaintiff's only restriction upon her return to work was that she work from home from through January 30, 2017.

37. Plaintiff followed procedure and promptly notified Ms. DePecol of her medical clearance to return to work and doctor prescribed restrictions. Ms. DePecol directed Plaintiff to reach out to Defendant's Leave of Absence coordinator. On November 22, 2016 Plaintiff reached out to Defendant's Leave of Absence coordinator and left a voicemail on Defendant's Leave of Absence phone line. Plaintiff reached Penny (last name unknown) with Defendant's Leave of Absence department and was told to "Take it [Plaintiff's request to return to work] one day at a

time" as employees were out for the Holidays. Plaintiff was further notified that there would be additional documents she was required to complete, which she was not notified of prior, and she was not able to return to work on November 28, 2016. This intentional delay continued to injure Plaintiff as each day Plaintiff was delayed in her return to work was a day she was not compensated for. Plaintiff complied with Defendant's request and dutifully had the additional forms completed by her doctor and returned them the following day, November 23, 2017.

38. Defendant continued to ignore Plaintiff's request to return to work. Many days passed and on November 29, 2017 Plaintiff still had not returned to work due to Defendant's intentional delays. Ms. Judge contacted Plaintiff and confirmed receipt of Plaintiff's documentation but notified Plaintiff that there would be further delay as Defendant needed to "clarify" Plaintiff's restrictions with her doctor. This was clearly intended to further harass, discriminate, and retaliate against Plaintiff as she had just provided documentation from her doctor about her restrictions.

39. Penny then indicated she would need to again speak with Ms. DePecol before Plaintiff would be permitted to return to work. Penny further made a point to tell Plaintiff that the processing of her request to return to work would be further delayed by Ms. DePecol's limited availability due to "personal meetings." Ms. DePecol also made it known that she was not "happy" with Plaintiff's temporary restriction of working from home.

40. Upon information and belief, Defendant already had a model in place for employees in Plaintiff's role to work from home, such that accommodating Plaintiff's temporary restriction would not be onerous or difficult.

41. Frustrated, Plaintiff emailed Kenneth Burdick, Defendant's Chief Executive Officer to relay her concerns. Soon after, Desiree Demonbreun, Senior Corporate Counsel, contacted Plaintiff and notified her that Defendant would in fact accommodate her.

42. Plaintiff returned to work.

43. Upon her return to work Plaintiff faced an even more hostile, retaliatory, and discriminatory environment than what existed prior to hear leave. Due to its discriminatory animus, Defendant continued to erect many roadblocks to Plaintiff's success. For example, despite being on the same team with the same goals, Ms. Diaz was offered unbridled support to offer her recruits certain salaries, but Plaintiff was not making it more difficult for Plaintiff to successfully acquire appropriate talent. Plaintiff again escalated her concern to Ms. Judge, but received no response and no remedial action was taken.

44. In addition Plaintiff was paid in a disparate manner due as compared to her male colleagues, Michael Wilson, an African American Senior Recruiter, Justin Courtney, a Caucasian Senior Recruiter, and Cody (last name unknown), a Caucasian Senior Recruiter.

45. Plaintiff attempted to make the most of the hostile work environment and just when she believed things were looking up, she was again issued a write-up based on performance metrics *applied only* to Plaintiff. Along with the write-up, Plaintiff's performance was evaluated on a weekly basis for a period of eight (8) weeks. During a weekly performance meeting, Ms. Hodgdon oddly suggested that Plaintiff "dumb down" because she comes across as intimidating when she speaks – a direct statement in relation to her race. Ms. Hodgdon further stated something to the effect of - the solution to avoid any more complaints (about Plaintiff) or write-ups, it would be best to allow Ms. Hodgdon to speak on Plaintiff's behalf to those that did not see Plaintiff as a consultant.

9

46. As further retaliation, Defendant stopped accommodating Plaintiff by removing her ability to work from home.

47. Despite completing her eight (8) week review period with flying colors, Defendant placed Plaintiff on a final warning in July 2017. Defendant cited Plaintiff's "numbers" as the reason. Despite Defendant treating Plaintiff like a ping–pong ball and bouncing her from department to department her numbers remained competitive and Defendant's citation of Plaintiff's "numbers" was mere pretext.

48. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission. Plaintiff continued to make the best of an untenable situation and continued to perform her job duties.

49. A few months later Defendant placed Plaintiff on a paid suspension citing false allegations that Plaintiff had not notified Defendant of her whereabouts. Of note, Plaintiff frequently traveled between Defendant's various locations and it was not then or ever a requirement that she provide Defendant a play-by-play of her whereabouts as she was traveling from location to location.

50. Defendant then terminated Plaintiff using the false allegation that Plaintiff had not notified it of her whereabouts as pretext.

51. Plaintiff has been harmed by Defendant's illegal conduct.

**Count I: Race Based Discrimination in Violation of Title VII**

52. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

53. At all times relevant to this action, Plaintiff was in a protected category under Title VII because of her race, African American.

54. Defendant is prohibited under Title VII from discriminating against Plaintiff because of her race with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

55. Defendant violated Title VII by terminating and discriminating against Plaintiff based on her race.

56. Defendant intentionally discriminated against Plaintiff on the basis of her race.

57. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

58. Defendant's unlawful conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

## Count II: Sex Based Discrimination in Violation of Title VII

59. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

60. At all times relevant to this action, Plaintiff was in a protected category under Title VII because of her sex, female.

61. Defendant is are prohibited under Title VII from discriminating against Plaintiff because of her sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

62. Defendant violated Title VII by terminating and discriminating against Plaintiff based on her sex.

63. Defendant intentionally discriminated against Plaintiff on the basis of her sex.

64. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

65. Defendant's unlawful conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

### Count III: Retaliation in Violation of Title VII

66. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

67. Plaintiff engaged in protected activity under Title VII on more than one occasion while employed by Defendant.

68. Defendant engaged in intentional retaliation against Plaintiff for her participation in protected activity.

69. Defendant's conduct violated Title VII.

70. Plaintiff has satisfied all statutory prerequisites for filing this action.

71. Defendant's discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which she is entitled to damages.

72. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

73. Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling her to punitive damages.

### Count IV: Disability Discrimination in Violation of the ADA

74. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

75. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

76. Plaintiff was able to perform the essential functions of her job at the time of her termination.

77. Defendant is prohibited under the ADA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

78. Defendant violated the ADA by unlawfully terminating and discriminating against Plaintiff based on her disability.

79. Plaintiff has been damaged by Defendant's illegal conduct.

81. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

81. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

82. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

### Count V: Retaliation under the ADA

83. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51, above.

84. Defendant intentionally retaliated against Plaintiff for engaging in protected activity.

85. Defendant's conduct violates the ADA.

86. Plaintiff has satisfied all statutory prerequisites for filing this action.

87. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

88. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

89. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling him to punitive damages.

### Count VI: Retaliation in Violation of the FMLA

90. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51, above.

91. Plaintiff was an employee eligible for protected leave under the FMLA.

92. Defendant is and was an employer as defined by the FMLA.

93. Plaintiff exercised, or attempted to exercise, her rights under the FMLA.

94. Defendant retaliated against Plaintiff for exercising, or attempting to exercise, her FMLA rights.

95. Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

96. Plaintiff was injured due to Defendant's willful violation of the FMLA, to which she is entitled to legal relief.

### Count VII: Race Based Discrimination in Violation of the FCRA

97. Plaintiff re-alleges and adopts, as if full set forth herein, the allegations stated in Paragraphs 1-51 above.

98. At all times relevant to this action, Plaintiff was in a protected category under the FCRA because of her race, African American.

99  Defendant is prohibited under the FCRA from discriminating against Plaintiff because of her race with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

100. Defendant violated the FCRA by terminating and discriminating against Plaintiff based on her race.

101. Defendant intentionally discriminated against Plaintiff on the basis of her race.

102. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the FCRA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

103. Defendant's unlawful conduct in violation of the FCRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

### Count VIII: Sex Based Discrimination in Violation of the FCRA

104. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

105. At all times relevant to this action, Plaintiff was in a protected category under the FCRA because of her sex, female.

106. Defendant is prohibited under the FCRA from discriminating against Plaintiff because of her sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

107. Defendant violated the FCRA by terminating and discriminating against Plaintiff based on her sex.

108. Defendant intentionally discriminated against Plaintiff on the basis of her sex.

109. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the FCRA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

110. Defendant's unlawful conduct in violation of the FCRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

### Count IX: Retaliation in Violation of the FCRA

111. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

112. Plaintiff engaged in protected activity under the FCRA on more than one occasion while when she raised her concerns to Defendant.

113. Defendant engaged in intentional retaliation against Plaintiff for her participation in protected activity.

114. Defendant's conduct violated the FCRA.

115. Plaintiff has satisfied all statutory prerequisites for filing this action.

116. Defendant's discriminatory conduct, in violation of the FCRA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which he is entitled to damages.

117. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

118. Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling her to punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, and prejudgment interest thereon;

b) Grant Plaintiff her costs and an award of reasonable attorneys' fees (including expert fees); and

c) Award any other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all triable issues herein.

                                                        Respectfully Submitted,

                                                        */s/ Gabrielle Klepper*
                                                        Gabrielle Klepper
                                                        FL Bar No. 92815
                                                        **Spielberger Law Group**
                                                        4890 W. Kennedy Blvd., Ste. 950
                                                        Tampa, FL 33609
                                                        Tel. (800) 965-1570 ext. 126
                                                        Fax (866) 580-7499
                                                        gabrielle.klepper@spielbergerlawgroup.com

                                                        *Attorney for Plaintiff*